*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BADOUR/LOPEZ/EASTER Minors.

UNPUBLISHED
April 30, 2026
10:55 AM

No. 377382, 377383
Bay Circuit Court
Family Division
LC No. 25-014029-NA

Before: RIORDAN, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

In this consolidated appeal,[1] respondent-mother appeals by right the trial court's order authorizing the petition filed by the Department of Health and Human Services (DHHS) and removing the minor children, MB, MAB, MRB, VL, and OE, from her care and custody following the preliminary hearing.[2] Respondent-father appeals the same order as to OE, who is his biological child. We affirm.

## I. BACKGROUND

At all times relevant to this appeal, respondents were married. In 2023, Children's Protective Services (CPS) investigated allegations that respondent-father sexually abused his stepdaughter, MB. During a forensic interview, MB disclosed more than one instance of penile penetration by respondent-father. The DHHS filed a petition seeking respondent-father's removal from the home. Respondent-mother was not included as a respondent, and OE was the only child involved in the proceedings. The petition was authorized, the trial court obtained jurisdiction over OE, respondent-father was removed from the home, and regular review hearings were held. Respondents represented to the trial court that respondent-father would not return to the family

---

[1] See *In re Badour/Lopez/Easter Minors*, unpublished order of the Court of Appeals, entered October 3, 2025 (Docket Nos. 377382, 377383).

[2] The petition did not name the fathers of MB, MAB, MRB, or VL as respondents, and the fathers of those four children are not parties to this appeal.

-1-

home while MB lived there. MB later recanted the allegations contained in the 2023 petition and the case was closed in December 2024. At the time the case was closed, respondent-mother was put on notice that she would be a potential respondent in a petition if there were any further allegations and she failed to protect her children from any further abuse.

Almost immediately after the 2023 case closed, respondent-father moved back into the family home while MB was living there. In May 2025, respondent-mother gave respondent-father power of attorney over MB and left all of the children in respondent-father's care while she sought inpatient mental health treatment. In August 2025, the DHHS received new allegations of neglect and abuse. MB disclosed to police officers that respondent-father had sexually abused her for several years and had sexually assaulted her five days earlier. MB underwent a Sexual Assault Nurse Examiner (SANE) exam[3] and was admitted for inpatient mental health treatment. MB disclosed the sexual abuse to therapists, doctors, and nurses during her examination and treatment.

On August 28, 2025, the DHHS filed a petition seeking termination of respondents' parental rights at disposition. At the time the petition was filed, respondents were still married and living together. An ex parte order to take the children into protective custody was entered after-hours on August 28, 2025. A referee conducted a preliminary hearing on August 29, 2025. The CPS investigator discussed MB's sexual assault and grooming allegations. The CPS investigator testified that MB consistently disclosed to at least eight different people, including police officers and medical professionals, that respondent-father had sexually abused her for several years. Although MB had recanted some allegations in the past, her therapist told the CPS investigator that the allegations were "consistent enough to raise red flags." On the morning of the hearing, MB told the CPS investigator that respondents told her to lie to the DHHS and tell them that she fabricated the allegations. The CPS investigator testified that DHHS created a written safety plan requiring respondent-father to stay out of the family home during the investigation. Respondent-father initially agreed but returned to the home 10 days later. The CPS investigator expressed concern about the risk of sexual abuse to MAB, MRB, and VL in light of respondent-father's sexual abuse of MB and respondent-mother's choice to resume living with respondent-father despite the sexual-abuse allegations.

Given the family's history of substantiated physical abuse and neglect, the CPS investigator testified that there were concerns that OE could also be subjected to abuse or neglect in respondent-father's care. According to the investigator, OE was typically asleep every time she had seen him in one-on-one care with respondent-father, regardless of the time of day. On the few occasions that the investigator saw OE awake, she observed that he was "typically dirty," "unkempt," and wearing only a diaper.

The referee found that there was probable cause that one or more of the allegations in the petition were true, there were sufficient grounds to authorize the petition, and it was contrary to the welfare of the minor children to remain under respondents' care and custody. The referee also determined that the DHHS did not have to make reasonable efforts to avoid removing the children because there were aggravated circumstances in this case. The referee recommended that MB and VL be placed with their biological fathers and the remaining children be placed with the DHHS.

---

[3] At the time of the preliminary hearing, the results from the SANE exam were not yet available.

The trial court entered an order consistent with the referee's recommendations. This appeal followed.

## II. STANDARDS OF REVIEW

We review "a trial court's decision to dismiss or authorize a petition following a preliminary hearing for an abuse of discretion." *In re KNK*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 370841); slip op at 3. "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or when it makes an error of law." *Id*. at __; slip op at 3. The trial court's findings of fact, if any, are reviewed for clear error. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). A finding is clearly erroneous if the reviewing court "is left with a definite and firm conviction that a mistake has been made." *Id*. (cleaned up). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). We defer to the trial court's "special opportunity . . . to judge the credibility of the witnesses who appeared before it." *Id*.

We review de novo the interpretation and application of statutes and court rules. *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019). Whether child protective proceedings comply with a parent's right to due process presents a question of constitutional law that we also review de novo. *Id*.

## III. PROBABLE CAUSE

Respondent-father and respondent-mother both argue that the trial court erred by authorizing the petition because the sexual assault allegations were not sufficiently credible to meet the probable-cause standard. We disagree.

"Child protective proceedings are initiated when a petition is filed in the trial court that contains facts constituting an offense against a child under MCL 712A.2(b) of the juvenile code, MCL 712A.1 et seq." *In re Long*, 326 Mich App 455, 459; 927 NW2d 724 (2018). As relevant here, MCL 722.638 states:

> (1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:
>
> (a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:
>
> * * *
>
> (ii) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.
>
> * * *

(2) In a petition submitted as required by subsection (1), if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk, the department shall include a request for termination of parental rights at the initial dispositional hearing as authorized under section 19b of chapter XIIA of 1939 PA 288, MCL 712A.19b.

The petition must contain "the essential facts that, if proven, would allow the trial court to assume jurisdiction over the child." *Ferranti*, 504 Mich at 15 (cleaned up), citing MCR 3.961(B)(3) and MCL 712A.2(b). "After receiving the petition, the trial court must hold a preliminary hearing and may authorize the filing of the petition upon a finding of probable cause that one or more of the allegations are true and could support the trial court's exercise of jurisdiction under MCL 712A.2(b)." *Id*.

There is no clear error in the factual findings supporting the probable-cause determination in this case. The referee found that there were credible allegations that respondent-father had sexually abused MB via criminal sexual conduct involving penetration and respondent-mother was aware of the allegations but failed to protect MB from this abuse. The referee's findings, which were adopted by the trial court, were supported by the testimony of the caseworker who stated that MB consistently told least eight different people that respondent-father had been sexually assaulting her for years. Respondents are correct that MB recanted similar allegations in the past. However, according to MB's therapist, the allegations were "consistent enough to raise red flags." Additionally, MB reported to the CPS investigator that respondents told her to lie and tell the DHHS that she fabricated the allegations. The referee found the CPS investigator's testimony credible, and we recognize the special opportunity of the referee to judge the credibility of the witnesses who appeared before her. See *Ellis*, 294 Mich App at 33; see also MCR 2.613. On the basis of these facts, the trial court did not clearly err by finding, under the probable-cause standard, that there were credible allegations that respondent-father had sexually abused MB and that respondent-mother failed to protect MB from this abuse.

Relying on the doctrine of anticipatory neglect, the trial court also concluded that there was probable cause to believe that MAB, MRB, VL, and OE were also at risk of abuse or neglect. "The doctrine of anticipatory neglect provides that how a parent treats one child is probative of how that parent may treat other children." *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020). Respondent-father's alleged abuse of his stepdaughter, MB, from the age of 14 until the age of 16 was "an especially egregious violation of a child who had looked to respondent for care and protection as a father figure." See *id*. at 322. Respondent-father's treatment of MB is probative of how he may treat her half-siblings: twelve-year-old MAB, ten-year-old MRB, eight-year-old VL, and four-year-old OE. See *id*. at 323. The fact that OE is a boy is of no consequence because, as this Court has recognized in *Mota*, "abuse is abuse." *Id*. (rejecting the respondent's "pseudo-psychological argument" that he was not a danger to his sons even though he sexually abused their half-sister, emphasizing that "abuse is abuse"). And respondent-mother's failure to protect MB from the abuse is probative of how she may treat the other children. Independent evidence that additional children were abused or neglected "is not a prerequisite for jurisdiction of [those children] and application of the doctrine of anticipatory neglect." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). Although there was no evidence that respondent-father abused MAB, MRB, VL, or OE, we are not left with a definite and firm conviction that the trial court

made a mistake by concluding that there was probable cause to believe that MAB, MRB, VL, and OE were also at risk of abuse or neglect.

Accordingly, the trial court did not abuse its discretion by authorizing the petition.

## IV.  DUE PROCESS

Respondent-father argues that the trial court violated his due-process rights by allowing the DHHS to remove OE without creating a written safety plan.  We disagree.

Respondent-father did not raise his due-process claim in the proceedings below and thus the issue is not preserved.  Accordingly, our review is for plain error affecting substantial rights. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021).  "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 258 (cleaned up).  "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (cleaned up).  "The party asserting plain error bears the burden of persuasion with respect to prejudice." *In re MJC*, 349 Mich App 42, 48; 27 NW3d 122 (2023).

"It is well-established that parents have a fundamental right to the care, custody, and control of their children." *In re Walters*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369318); slip op at 1.  "[A] tenet of due process is that parties be given adequate notice of what they must do to avoid deprivation of fundamental rights." *Id*. at ___; slip op at 6.  "Reasonable efforts to reunify the child and family must be made in *all* cases except those involving aggravated circumstances . . . ." *In re Simonetta*, 340 Mich App 700, 707; 987 NW2d 919 (2022) (cleaned up; omission in original).  "Absent aggravating circumstances, the DHHS has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *Id*. (cleaned up).  "As part of these reasonable efforts, the DHHS must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. (cleaned up)  However, reasonable efforts to prevent removal are not required where "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided" in MCL 722.638(1) and (2).  MCL 712A.19a(2)(a).

As relevant to this case, "aggravated circumstances" include situations in which:

(a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

\* \* \*

(ii) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.  [MCL 722.638(1)(a)(ii).]

Here, the DHHS had no duty to make reasonable efforts to avoid removing the children because the trial court found that the sexual assault allegations constituted aggravated

circumstances under MCL 722.638(1)(a)(ii). See MCL 712A.19a. Further, respondent-father misstates the reason why the DHHS filed this petition. The DHHS filed the 2025 petition because it substantiated MB's sexual-abuse allegations. The DHHS had a statutory duty to file a petition and request that the court terminate respondent-father's parental rights to OE at the initial disposition, see MCL 722.638(2), because respondent-father was accused of sexually abusing OE's half-sibling, see MCL 722.638(1)(a)(ii). Respondent-father's due-process rights were not violated.

## V. REMOVAL

Respondent-mother argues that the trial court erred by removing the children from her care because the trial court failed to determine that removing the children would be sufficient to safeguard their health and welfare. Respondent-father argues that the trial court erred by removing OE from his care because there was no evidence that respondent-father did not provide adequate care. We disagree.

If a trial court authorizes the filing of the petition, it must then determine the child's placement. MCR 3.965(B)(12), (13), (C). The trial court may order a child placed in foster care if the following findings are made:

> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subrule (a).

> (c) Continuing the child's residence in the home is contrary to the child's welfare.

> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCR 3.965(C)(2); see also MCL 712A.13a(9).[4]]

If the trial court orders placement of the child outside of the respondent-parent's home, it must explicitly find that "it is contrary to the welfare of the child to remain at home," MCR 3.965(C)(3), and that "reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required," MCR 3.965(C)(4).

The referee found that it was contrary to the welfare of the children to remain in respondents' care and custody because of the underlying sexual abuse allegations against

---

[4] MCL 712A.13a(9) is nearly identical to MCR 3.965(C)(2). There are no substantive differences, and the language in subdivisions (a) through (e) of both the statute and the court rule is indistinguishable.

respondent-father concerning MB, in addition to respondent-mother's failure to protect MB, after she disclosed the sexual abuse. As discussed, the trial court relied on the doctrine of anticipatory neglect to conclude that MAB, MRB, VL, and OE were also at risk of abuse or neglect on the basis of respondent-father's sexual abuse of MB and respondent-mother's failure to protect MB. See *Mota*, 334 Mich App at 323. The fact that OE is a boy is of no consequence because, as this Court has recognized in *Mota*, "abuse is abuse." *Id*. Although none of the other children advanced any allegations regarding physical, sexual, or emotional abuse against respondents, that does not preclude application of anticipatory neglect doctrine and removal of the children. See *Kellogg*, 331 Mich App at 259. On the basis of the respondent-father's sexual abuse of MB and respondent-mother's failure to protect MB, the referee found that there was a substantial risk of harm to the children's health and safety under respondents' care and removal was the only reasonably available remedy to safeguard the children. The referee further found that reasonable efforts were not required because of the aggravating circumstances and keeping the children away from respondents was adequate to safeguard the children's health and welfare. The referee's findings, which were adopted by the trial court, satisfied its obligation under MCL 712A.13a(9) and were supported by the testimony of the CPS investigator. Respondents have failed to establish any error during the removal proceedings warranting reversal.

Affirmed.

/s/ Michael J. Riordan
/s/ James Robert Redford
/s/ Sima G. Patel